UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

UNITED STATES          *
        *
        *
    v.         *     CR. NO. L-10-0150
        *
DAYVON WATSON         *
    Defendant         *
*******

MEMORANDUM

    Defendant Dayvon Watson is charged in a two-count indictment with being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §922(g), and possessing firearms in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c). Watson has moved to suppress tangible evidence seized from 1722 North Durham Street, Baltimore, Maryland, and statements made to law enforcement agents after his arrest. Docket Nos. 24, 27.

    The Court held a hearing on the motion on July 30, 2010. At the hearing, the Government presented testimony from Task Force Officers Gary Smith and Michael Pratt. The Court also received exhibits into evidence and heard argument on the motions. Having carefully reviewed the testimony, the exhibits, and the parties' briefs, the Court will, by separate Order of even date, DENY the motion.

**I.    Background**

    The facts were fully set forth in the parties briefs and at the July 30 hearing. The essential facts are as follows.

    On March 24, 2010, members of the ATF Violent Crimes Task Force were investigating Tavain Johnson and Dayvon Watson. Both men, who are close associates, are suspected of being members of the Bloods gang. Watson has five felony convictions and is a suspect in

several murder investigations. Warrants were also outstanding against both Johnson and Watson. Johnson was wanted for first degree murder, and Watson was wanted for failing to appear on a loitering charge.

On the morning of the 24th, Officer Smith established surveillance at 1772 Durham Street. Two confidential sources had identified this address as Watson's residence. At 9:40 a.m., Watson exited the home, walked out of sight, returned a few minutes later with a plastic bag, and then re-entered the home. Approximately one hour later, Johnson exited the home and was arrested. While the officers were arresting Johnson, Watson appeared outside momentarily, noticed the police arresting Johnson, re-entered the home, and closed the door behind him.

The officers then entered Watson's home without knocking and announcing their presence. They arrested Watson, and seized weapons and drug paraphernalia, which they had observed in plain view.

Minutes after the police took Watson into custody, Sergeant Torran Burrus advised Watson of his Miranda rights. Watson stated that he understood his rights and then made statements to the police. Watson was again advised of his Miranda rights at 6:20 p.m., some five minutes before Detective Smith interrogated him. Watson signed and printed his name beneath a "waiver-of-rights provision."

**II.  Analysis**

Watson's motion presents two issues. First, whether the police violated the Fourth Amendment by entering his home without a warrant. Second, whether the police violated the

Fourth Amendment by failing to knock-and-announce before entering the residence.[1] The Court will address each of these issues in turn.

### A. Warrantless Entry into 1722 North Durham Street

#### 1. Protective Sweep

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Although there is a presumption of invalidity that attaches to a warrantless entry of a residence, the government argues that the officers were permitted to enter 1722 North Durham to conduct a protective sweep in connection with the arrest of Tavon Johnson.

Officers may "sweep" a nearby house incident to an arrest outside the house if they have a "reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 337 (1990). Here, a sweep would have been justified had the arrest taken place close to the house. Johnson was being arrested on a murder warrant, and Watson has a lengthy criminal record, including five felony convictions. The police believed that Watson and Johnson were members of the Bloods gang, that they were close friends, and that Watson was in the house. Thus, there was a danger that Watson might act rashly in an attempt to free Johnson.

Nevertheless, in this case, the government has failed to prove that the sweep was necessary for officer safety. Officers Smith and Pratt presented conflicting testimony as to the distance between the house and where Johnson was arrested. Smith stated that the arrest took place approximately twenty yards from the house, and Pratt testified that the arrest took place

---

[1] Watson does not present an independent basis for suppressing his statements. Rather, he argues that they must be suppressed as fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471 (1963).

3

approximately sixty to seventy yards from the house. Notably, the government did not call a third officer to reconcile these conflicting accounts. The danger from a suspect in a nearby home to officers effectuating an arrest on the street diminishes as distance from that home increases.

Further, the government offered no testimony to support safety concerns at the longer distance. For example, it did not present evidence that someone inside the house would have had a clear shot at the arresting officers. In the absence of such testimony, the Court is disinclined to hold that a protective sweep was necessary.

### 2. Arrest Warrant

The government also argues that the arresting officers were permitted to enter 1722 North Durham to effectuate Waton's arrest on the failure-to-appear warrant. Watson does not dispute that the warrant was valid, and he acknowledges that officers possessing a valid arrest warrant have "the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." United States v. Payton, 445 U.S. 573, 603 (1980); see also Steagald v. United States, 451 U.S. 204, 214 n. 7 (1981) ("Because an arrest warrant authorizes the police to deprive a person of liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home.").

Nevertheless, Watson argues that Officer Smith, who was on surveillance duty, deliberately created the circumstances that authorized the officers' warrantless entry. Watson contends that, if feasible, the police must arrest a person outside of his or her residence. Therefore, Watson argues that Smith should have arrested Watson before he returned to his home. In the alternative, Watson contends that when a defendant is wanted on a misdemeanor charge, Payton does not permit warrantless entry into the defendant's residence.

The Court rejects each of these arguments. With respect to the first, there is simply no case-law that requires the police to arrest a person outside of his or her residence. Even if there were such a requirement, Officer Smith was justified in deciding not to arrest Watson the first time that he observed Watson outside of the home. At that time, Smith was alone on surveillance duty, and he acted reasonably in waiting to arrest Watson until back-up arrived.

With respect to the second, neither the Fourth Circuit nor the United States Supreme Court have considered Watson's position that a misdemeanor bench warrant for failing to appear does not authorize a warrantless entry into a residence under Payton. Both the Second Circuit and the Ninth Circuit, however, have held that Payton permits entry into a residence to effectuate a valid arrest warrant, regardless of the nature of the underlying warrant. See United States v. Gooch, 506 F.3d 1156, 1159 (9th Cir. 2007); United States v. Spencer, 684 F.2d 220, 223 (2d Cir. 1982). This rule has been followed in similar cases "with near uniformity by the federal courts." Gooch, 506 F.3d at n.1 (collecting cases).

The Court agrees with the majority position. The Fourth Amendment protects individuals from unfettered police activity. Payton's requirement that the police possess a valid arrest warrant, which must be issued by a judge or magistrate, adequately safeguards a defendant's privacy interests. It is of no moment whether the arrest warrant is for a felony or a misdemeanor, so long as it has been lawfully issued. The law recognizes no sanctuaries from the power of a valid arrest warrant.

Here, it is undisputed that the warrant for Watson's arrest was valid. Accordingly, the entry was reasonable.

### B. Knock and Announce

Watson argues that, even if the officers' entry was reasonable, they violated the Fourth Amendment by failing to knock and announce their presence. Although officers authorized by warrant to enter a private dwelling generally must comply with the knock-and-announce requirement before entering, exceptions to the rule exist where (i) an officer justifiably believes that the suspect knows of the officer's presence and purpose, such than "an announcement would be a useless gesture," Miller v. United States, 357 U.S. 301, 310 (1958), or (ii) the officer has reasonable suspicion that knocking and announcing "would be dangerous or futile, or . . . would inhibit the effective investigation of the crime, Richards v. Wisconsin, 520 U.S. 385, 394 (1997). Here, both of the exceptions are met.[2]

First, Watson knew of the officers' presence and purpose. Watson saw Johnson being arrested, and Watson knew or reasonably suspected that he was the subject of an arrest warrant for failing to appear. Thus, Watson knew that the police were likely to enter the house and arrest him. In sum, Watson possessed all of the information that a knock and announce would have supplied.

Second, the officers had reasonable suspicion that knocking and announcing would have placed their safety in jeopardy. The officers knew that Watson had spotted them arresting Johnson and that Watson had retreated into his home. The officers also knew that at least one other person, whom they had observed wearing Bloods colors, was inside the house. Further,

---

[2] The exclusionary rule is inapplicable where the evidence seized "was not the fruit of the fact that the entry was not preceded by knock-and-announce." Hudson v. Michigan, 547 U.S. 586, 593 (2006). Because exceptions to the knock-and-announce rule are present, the Court need not address the government's position that the evidence would have been recoverable even if the officers had knocked and announced.

Watson has a lengthy criminal history and is a suspect in several murders.  Given these facts, the officers reasonably suspected that knocking and announcing would have been dangerous.

**III.    Conclusion**

For the above reasons, the Court will, by separate Order of even date, DENY the motion.


Dated this  3d  day of August, 2010.                        /s/
                                                          Benson Everett Legg
                                                          United States District Judge